E. L. (ED) RAINS, Appellant, v. ORA FRANCES HIGGINS RAINS, Appellee.—428 S.W.(2d) 650.

Middle Section. February 23, 1968.

Certiorari Denied by Supreme Court May 20, 1968.

216

R. E. Bonner, Jr., McMinnville, for appellant.

Haston & Haston, McMinnville, for appellee.

TODD, J. In this divorce case the defendant, E. L. (Ed) Rains, has appealed from a decree which sustained the bill of the complainant, Ora Frances Higgins Rains, dismissed the cross bill of the defendant, and granted to complainant an absolute divorce and sole title to all property formerly held jointly by the parties.

The first assignment of error is as follows:

"The Court erred in granting the Appellee a divorce and divesting title to the real estate owned by the parties, as tenants by the entireties, as the Court of General Sessions of Warren County, Tennessee has no jurisdiction to hear and determine divorce cases and to divest title to real estate, the value of which exceeds the jurisdictional limitation of the Justice of the Peace Courts."

It is insisted by defendant that the trial court had and has no jurisdiction of this or any divorce case because Chapter 54 of the Private Acts of the 1949 General Assembly, which undertook to confer such jurisdiction, is unconstitutional on a number of grounds which will be discussed in order.

1. It is insisted that the subject Act violates the Tennessee Constitution, Section 17, Article 2 of which contains the following:

"No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. All acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the

title or substance of the law repealed, revived or amended."

At least three other Private Acts, enacted prior to 1949, affected the General Sessions Court of Warren County. Chapter 91, Private Acts of 1941, created the General Sessions Court of Warren County, transferred to it all of the judicial powers of the Justices of the Peace, and provided for the compensation and selection of the General Sessions Judge. Chapter 253 of the Private Acts of 1943 authorized Justices of the Peace of Warren County to issue "all warrants and other papers". Chapter 372 of the Private Acts of 1943 provided that the County Judge and General Sessions Judge of Warren County might sit for each other by interchange.

Chapter 54 of the Private Acts of 1949 undertook to confer divorce jurisdiction upon the General Sessions Court of Warren County. Pertinent portions thereof are as follows:

"AN ACT to amend House Bill No. 239, Chapter No. 91, of the Private Acts of 1941, entitled: "AN ACT to create and establish a Court in and for Warren County, Tennessee, which shall be designated as Court of General Sessions of Warren County, Tennessee, to prescribe the jurisdiction thereof, to limit the jurisdiction of Justices of the Peace of Warren County, Tennessee, and to repeal all laws in conflict with this Act which apply to Warren County, Tennessee", by enlarging the jurisdiction of said Court by making same a Court of Record so as to give said Court concurrent jurisdiction with Chancery and Circuit Courts to hear and determine divorce cases, providing for appeal therefrom in such cases, fixing rules governing the procedure of said Court, empowering the Judge

of said Court to make other rules and regulations governing the procedure and practice of the Court as a Court of Record; fixing the qualifications and salary of the Judge of the said Court of General Sessions of Warren County, Tennessee; giving the Judge of said Court concurrent jurisdiction with Judges of all Courts and Chancellors to grant fiats authorizing the issuance of injunctions and attachments; and to repeal all laws and parts of laws in conflict with this Act.

Section 1. Be it enacted by the General Assembly of the State of Tennessee, That House Bill No. 239, Chapter No. 91 of the Private Acts of 1941, the caption of which is fully set forth in the caption of this Act, be and the same is hereby amended as follows:

Sec. 2. Be it further enacted, That the Court of General Sessions of Warren County, Tennessee, shall have concurrent jurisdiction with Circuit and Chancery Courts in all proceedings for divorces as provided by Sections Nos. 10325 and 10379 of the official Code of the State of Tennessee for the year 1932. An appeal from the judgment of said Court in all divorce matters shall be to the Court of Appeals or to the Supreme Court in the same manner as provided in such cases from the Circuit and Chancery Courts.

Sec. 3. Be it further enacted, That the Court of General Sessions of Warren County, Tennessee, shall be and is hereby made a Court of Record, and the laws regulating pleading and practice, stay of judgments, writs and processes in civil and criminal cases in Courts of Justice of the Peace, shall apply to the Court of General Sessions of Warren County, Tennessee, and in all other cases to be tried and determined by

said Court, having jurisdiction concurrent with the Circuit and Chancery Courts, the pleadings and practices in such cases shall be the same provided by law for such Courts."

■ Defendant complains that neither Chapter 253 nor Chapter 372 of the Private Acts of 1943 are mentioned in the caption or body of the Act presently under attack (Chapter 54, 1959), and cites Cheatham County v. Murff, 176 Tenn. 93, 138 S.W.2d 430 (1940), which contains the following:

"The object of the constitutional provision under consideration was to prevent the pernicious practice of enacting statutes whose effect was unknown to the members of the Legislature and to the people. * * * To direct the attention of the Legislature to the existing law and the proposed change and thus prevent improvident legislation. [176 Tenn. at 102, 138 S.W.2d at 433].

When, under an appropriate caption, an Act of the Legislature on its face plainly discloses its whole effect and where it is independently operative, neither legislators nor the people would be further enlightened as to its scope by a recital of the title or substance of former laws. If there is irreconcilable conflict, the former laws are repealed by implication. If there is no such conflict and the earlier and later laws involve the same subject matter, they will be construed in pari materia." (176 Tenn. at 103, 138 S.W.2d at 433.)

We cannot agree that the omission of the amendatory acts (Chapters 253 and 372) invalidates the later amendatory act, Chapter 54, 1949, now under consideration.

In the case of State v. McConnell, 71 Tenn. 332 (1879) it was held that an act entitled "an Act to create and establish the sixteenth judicial circuit of the state" was sufficiently captioned to authorize the transfer of Overton County from the Fifth Circuit to the new circuit, and the transfer of Trousdale County from the Seventh Circuit to the Fifth Circuit. The same opinion states:

"The establishment of a new judicial circuit in a State already divided into circuits, must necessarily require some change in the circuits previously existing, and such change may well be considered as germane to the subject and embraced in a caption embodying the general object. Cannon v. Mathes, 8 Heis., 504. And the positive provision of the act by which a designated county is detached from one circuit and attached to another, takes the act out of the class of cases intended by that part of the 17th section of the second article of the Constitution of 1870, which relates to "all acts which repeal" former laws. Morrill v. Fickle, 71 Tenn. at 340."

The act designed and captioned to amend the original General Sessions Court Act of Warren County certainly was of purpose broad enough to effect any incidental changes in acts amendatory to the original act. By alternate reasoning, the Act of 1941 had been twice amended in 1943, so that in 1949, a reference to the Act of 1941 was reasonably intended to mean the Act of 1941 as amended from time to time and as it existed in amended form in 1949.

Defendant asserts that the effect of the Act of 1949 would be to authorize Justices of the Peace to issue writs in divorce cases contrary to Section 12, Article 6, of the

Constitution providing that writs shall "be signed by the respective clerks". We do not hold that the act has such effect, but its effect in this regard is not before the court in this case. No writ in the present case is shown to have been issued by a Justice of the Peace.

■ 2. In further support of his first assignment of error, defendant insists that the subject of divorce involves the interests of the State to such extent that divorce judges serve essentially State purposes, and that their salaries may not be paid out of county funds. Judges' Salary Cases, 110 Tenn. 370, 75 S.W. 1061, (1903) does hold that the judges of the chancery, circuit and criminal courts are state officers, elected and commissioned as such, holding state offices, created and existing for distinctively and essentially State purposes; and therefore they are not county officers and may not be paid out of county funds. In the case of Hancock v. Davidson County et al., 171 Tenn. 420, 104 S.W.2d 824 (1937), the Supreme Court found that the Court of General Sessions of Davidson County was designed to serve both State and County, and therefore refused to apply the holding of the Judges' Salary Cases, supra, to a General Sessions Court. Davidson County v. Kirkpatrick, 150 Tenn. 546, 266 S.W. 107 (1924) was a case in which the county was permitted to contribute to the salary of a District Attorney General, a state official.

■ 3. It is next insisted that the Act of 1949 is void for vagueness, however the insistence is supported by neither argument nor authorities, and we find no merit therein.

■ 4. In further support of his first assignment, defendant insists that the Act of 1949 is broader than its

caption because of its reference to Sections 10325 and 10379 of the Code of 1932 (now 16-508 and 16-612 T.C.A.) which sections pertain to other matters in addition to divorce. The Act of 1949 plainly states *"in all proceedings for divorce* as provided by Sections Nos. 10325 and 10379 * * *"*. Non-divorce matters contained in said code sections are plainly excluded by omission from the Act of 1949.

█ 5. Defendant further insists under his first assignment of error that Title 36, Chapter 8 of the present code deals with both Divorce and Annulment and thereby is created a vagueness as to whether the Warren County General Sessions Court may hear and determine annulment cases. No question of annulment is involved in the present case, hence we consider the insistence to be moot.

██ 6. Finally, under the first assignment, it is insisted, without argument or citation of authorities that the trial court "is without jurisdiction to hear and determine divorce cases and divest title to real estate without regard to its jurisdictional limitation as to value." A recently announced opinion in the case of Langford v. Langford, 220 Tenn. 600, 421 S.W.2d 632. (1967) recognizes the jurisdiction of the General Sessions Court of Overton County to divest real estate out of the husband and to vest the same in the wife as an incident to a divorce proceeding. Said opinion contains the following:

"The General Sessions Court of Overton County, having been given concurrent jurisdiction with the circuit and chancery courts in matters relating to divorce, is, when acting in this area of the law, a court of general jurisdiction." 220 Tenn. at 603, 421 S.W.2d at 634.

Section 1 of Article 6 of the Constitution of Tennessee, and the many cases annotated thereunder in Volume 1 of Tennessee Code Annotated, adequately dispose of any question of the authority of the General Assembly to make allocation of judicial powers and jurisdiction.

The first assignment of error is respectfully overruled.

 The second assignment of error is as follows:

"The Court erred in divesting title to certain real estate from the Appellant to the Appellee as alimony, which was not described in the petition, attached or otherwise impounded."

The original bill contains the following:

"For the past six years your complainant has managed the homeplace—paid fire insurance on the barn and house—has painted the house—totally fenced— made several household repairs—.

\* \* \* \* \* \*

Premises considered, Complainant prays:

\* \* \* \* \* \*

(4) That because of her labors as aforesaid your complainant alleges that she is entitled to substantial alimony and she prays that same be decreed her along with her right of homestead for which she now makes demand.

(5) That upon the hearing she be given absolute title to their homeplace at Route #2 Woodbury in Warren County, which is owned as tenants by the entireties, including all furniture and furnishings therein."

The answer of the defendant is coupled with a cross bill which contains a metes and bounds description of the

real estate involved, which description is included in the decree from which defendant has appealed.

Defendant complains that complainant's bill contains no specific prayer for alimony, no adequate description of the property subsequently decreed to her and that no attachment was issued to bring the property before the court.

We are of the opinion that by a fair interpretation the above quoted portions of complainant's bill are sufficient to apprise defendant of her claims for alimony; that the bill, as supplemented by the answer of defendant, himself, certainly identifies the property to be dealt with; and that no attachment was necessary to subject the property to the jurisdiction of the court where both owners were before the court in personam.

Brown v. Brown, 198 Tenn. 600, 281 S.W.2d 492 (1955) is cited by defendant as authority for the proposition that a judgment or decree beyond the fair scope of the pleadings is void. In the Brown case, the cross bill of the wife did not mention the property at all, but the husband's bill described the property in question. The court held that the husband could not complain of a deficiency in his wife's pleading which was supplied by his own, and said:

"In determining whether or not a judgment is beyond the scope of the pleadings, those pleadings must be given a liberal construction with all reasonable intendments taken in favor of the judgment." 198 Tenn. at 611, 281 S.W.2d at 497.

The case of Terrell v. Terrell, 192 Tenn. 317, 241 S.W.2d 411 (1951), cited by defendant, involved a non-resident publication without personal service or pleading by defendant, hence cannot control the decision in this

case where both personal service and pleading by defendant are involved. The subsequent case of Wilson v. Andrew, 213 Tenn. 173, 375 S.W.2d 650 (1963) held that an attachment was not necessary to bring before the court in a divorce action the Tennessee real property rights of a non-resident defendant wife who was before the court by publication only. A fortiori, where both parties are before the court in personam, and the property is within the territorial jurisdiction of the court and reasonably identified in the pleadings, there can be no question of the power of the court to decree proper disposition of the property pursuant to Sections 36-820 et seq. T.C.A.

The second assignment of error is respectfully overruled.

The third assignment of error is as follows:

"The Court erred and abused its discretion, as a matter of law, in divesting title to all of the property owned from Appellant to the Appellee as alimony."

By this assignment we are asked to review the discretionary ruling of the trial judge in allowance of alimony and vesting of property in complainant. The factual background of the ruling is as follows:

Originally, complainant's father gave her a small plot of ground upon which the parties built a small house through their joint efforts. Later, complainant purchased from her father an additional five acres, and still later she purchased between 17 and 20 acres more from her father. Apparently, all acquisitions were put in the joint names of the parties. After a sojourn in another state, the parties returned and built a barn and new house through their joint efforts and finances, and later sold the small house first built and occupied by them.

Thereafter, defendant abandoned complainant and their minor child for a period of six years, during which time complainant worked, supported herself and son, and made a number of improvements in the property. From rental of a part of the property she derived some minor income, the amount of which is not shown.

During the six years of abandonment, defendant has been employed in various kinds of work, and appears to have been self-sufficient until recently. He now complains of arthritis and says he is unemployed because of his ailment, but offers no medical testimony on the subject. His own testimony does not make out a satisfactory case of either total or permanent disability. In addition, he is shown to be a veteran. As such, he would undoubtedly have recourse in a case of destitute disability.

Section 36-820 T.C.A. provides for awards of alimony and/or child support to a wife to whom a divorce is granted. The following Section provides as follows:

"36-821. *Portion of husband's estate decreed to wife.* —In such case, the court may decree to the wife such part of the husband's real and personal estate as it may think proper. In doing so, the court may have reference and look to the property which the husband received by his wife at the time of the marriage, or afterwards, as well as to the separate property secured to her by marriage contract or otherwise."

This section empowers the court in a divorce proceeding to award the wife part or all of the husband's real estate as alimony. Terrell v. Terrell, supra.

Toncray v. Toncray, 123 Tenn. 476, 131 S.W. 977, 34 L.R.A.,N.S., 1106 (1910) is cited for the proposition

that a husband should not be divested of all of his property in awarding alimony. The Toncray case is distinguishable on at least two grounds. In the Toncray case, the husband had already obtained a divorce in another state, had remarried and had a child of the second marriage. In the present case, the defendant has assumed no new marital responsibilities in good faith. At the time of the Toncray decision, "estate" figured largely in the ability of a man to provide for himself and his dependents. In the intervening years from 1910 to the present time, the economy of our society has changed to an emphasis upon earning capacity rather than "estate."

As stated in Toncray v. Toncray:

"Each case depends upon its own circumstances, and the amount is within the discretion of the court." 123 Tenn. at 495, 131 S.W. at 981.

Although the Court awarded the property of the parties to the wife "as alimony", there is no indication in the record as to what the Court found to be the proportionate share of the property equitably owned by the parties before this cause originated. At first blush, it would seem that property held jointly by husband and wife would be owned in equal shares. Circumstances of acquisition, maintenance, or improvement may, as in the present case, create equities between the parties which the Court is authorized to adjust as an incident to the divorce decree. See Witherspoon v. Witherspoon, 55 Tenn.App. 484, 402 S.W.2d 492 (1966).

All of the real property awarded to complainant was received by the parties from her father by gift or purchase. A fair inference would be that the father was generous in fixing the purchase price. Complainant as-

sisted in or completely performed all improvements made on the property and has maintained it since being deserted by defendant. Surely, she has acquired a substantial equitable interest therein in addition to bare joint title.

During six years of desertion complainant supported the minor child without any real assistance from defendant who was regularly and gainfully employed. Surely an equitable obligation of reimbursement accrued during this six years, which was considered by the trial court in adjusting the equities of the parties. See Kittrell v. Kittrell, 56 Tenn.App. 584, 409 S.W.2d 179 (1966) wherein the court said

"It seems to us no proper adjustment of the rights and interests of the parties under the 1959 Amendment of the Act can be made without taking into account complainant's past contributions to the care, support and education of the daughter as well as the contributions it is quite apparent he must continue to make until the daughter marries, becomes self-supporting or reaches her majority. Every equity favors the position of complainant. It would be most inequitable and unjust to allow defendant to take an undivided interest in the property which she acquired only because of the marital relationship and the generosity of complainant and escape all responsibility for the care, maintenance and education of the daughter of the parties."

The protestations of defendant that he is disabled and unable to support himself are not well supported. We feel, as the trial court evidently felt, that the disabilities of the defendant were aggravated by the pendency of this proceeding and will subside somewhat upon its termination.

If the defendant's claims to complete disability be well founded, then he will be unable to pay the award of $50.00 per month for child support, and the complainant will thereby sustain (as she has in the past) the entire responsibility of supporting the minor child. In such event, the award to the wife will have even greater foundation and usefulness.

The award of alimony was within the sound discretion of the court which was not abused.

The third assignment of error is respectfully overruled.

Each assignment of error having been carefully considered and overruled, the decree of the trial court is affirmed with costs, and the cause is remanded to the trial court for any necessary further proceedings.

Affirmed.

Shriver, P. J., and Puryear, J., concur.