**IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON**

**WENDY JEAN BYRNE,**

Plaintiff-Appellee,

Vs.

**STEVEN THOMAS BYRNE,**

Defendant-Appellant,

**FILED**

**March 31, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

FROM THE MADISON COUNTY
CHANCERY COURT, No. 53593
THE HONORABLE JOE C. MORRIS,
CHANCELLOR
C.A. No. W1999-01492-COA-R3-CV
*AFFIRMED*
James F. Butler; Spragins, Barnett,
Cobb & Butler, PLC; of Jackson
for Appellee
Mitchell G. Tollison; Hawks &
Tollison of Humboldt, for Appellant

_____

MEMORANDUM OPINION[1]
_____

***CRAWFORD, J.***

This is a divorce case, and the issues on appeal concern child custody, the allocation of marital assets, and attorney fees. Defendant-Appellant, Steven Thomas Byrne (Husband), appeals the judgment of the trial court granting Plaintiff-Appellee, Wendy Jean Byrne (Wife), custody of the parties' minor children, attorney's fees and the division of marital property.

The parties were married on October 22, 1978, and have five minor children from the marriage: four boys, ages 17, 12, 8 and 7, and a girl, age 14. Husband is an engineer and is currently employed with Dana Corporation, as a manufacturing supervisor, and earns $5,950.00 per month. Prior to the birth of the parties' first child, Wife attended college. After the birth of the children, Wife stayed home until the children were older, and then returned to school and worked at various jobs on a part time basis. Wife obtained her decree in engineering technology in April 1996, and she is currently employed full time with the City of Jackson, Tennessee earning $2,227.00 per month.

On August 8, 1997, Wife filed a complaint for divorce alleging irreconcilable

---

[1]Rule 10 (Court of Appeals). Memorandum Opinion. -- (b) The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

differences and inappropriate marital conduct on the part of Husband. She also

obtained an *ex parte* order of temporary custody and an *ex parte* restraining order

which ordered Husband to leave the marital home. On October 6, 1997, the trial court

entered a temporary order setting child support, ordering husband to pay Wife $750.00

per month towards the parties's mortgage of the marital residence, extending the

restraining order, and setting a schedule for visitation and telephone contact for

Husband with the parties' minor children. On November 4, 1997, Husband filed an

answer admitting irreconcilable differences while denying guilt of inappropriate marital

conduct, and filed a counter-complaint alleging inappropriate marital conduct on Wife's

part.

On January 20, 1999, the trial court entered a final decree of divorce finding that

both parties shared fault for the demise of their marriage. The decree, *inter alia,*

awarded Wife custody of the children, ordered Husband to pay $2,102.00 per month

to Wife as child support, divided the marital property and debts, and ordered Husband

to pay $23,536.15 alimony *in solido* to help defray Wife's attorney's fees and suit

expenses.

Husband perfected this appeal and presents the following issues for our review:

> 1. Whether the trial court erred in ordering that Plaintiff
> have custody of the parties' five (5) children?
>
> 2. Whether the trial court failed to make an equitable
> distribution of the assets and debts of the parties?
>
> 3. Whether the trial court erred in ordering Defendant to
> pay all of Plaintiff's attorney fees?

Since this case was tried by the trial court sitting without a jury, we review the

case *de novo* upon the record with a presumption of correctness of the findings of fact

by the trial court. Unless the evidence preponderates against the findings, we must

affirm, absent error of law. T.R.A.P. 13(d).

In his first issue, Husband asserts that the trial court erred in awarding

custody to Wife. Husband argues that the proof at trial reveals Husband is more fit

to have custody of the children.

Husband testified that he believes Wife has informed the parties' three oldest

2

children of matters concerning the divorce which they should not know and that this has harmed his relationship with the children. He also asserts that if Wife is given custody, his relationship with all the children, including the two youngest, will deteriorate. Husband also avers that Wife is not the parent she presents herself to be and that he was more involved with the children than Wife while she attended school.

Wife testified that she has been the children's primary care giver prior to and after the separation. She further states that Husband damaged his relationship with the children by taping their phone conversations, demanding their medical records, and having their mother arrested. Angela Doyle, the children's counselor, testified that the children were attached to Wife and that it would be detrimental to them if they were taken away. She further testified that in her opinion the children relied on each other and therefore should remain together. The three oldest children also testified that they wished to remain with Wife.

Trial courts are vested with wide discretion in matters of child custody and the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion. *Mimms v. Mimms*, 780 S.W.2d 739, 744-45 (Tenn. Ct. App. 1989). In child custody and visitation cases, the welfare and best interests of a child are the paramount considerations and the rights, desires, and interests of the parents become secondary. *Neely v. Neely*, 737 S.W.2d 539, 542 (Tenn. Ct. App.1987). In *Bah v. Bah*, 668 S.W.2d 663 (Tenn. Ct. App.1983), the Court established some guidelines for making the determination of best interest:

> We adopt what we believe is a common sense approach to custody, one which we will call the doctrine of "comparative fitness." The paramount concern in child custody cases is the welfare and best interest of the child. *Mollish v. Mollish*, 494 S.W.2d 145, 151 (Tenn. Ct. App. 1972). There are literally thousands of things that must be taken into consideration in the lives of young children, *Smith v. Smith*, 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949), and these factors must be reviewed on a comparative approach:
>
> > Fitness for custodial responsibilities is largely a comparative matter. No human being is

3

> deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others.
>
> *Edwards v. Edwards*, 501 S.W.2d 283, 290-91 (Tenn. Ct. App.1973) (emphasis supplied).

> *Bah*, 668 S.W.2d at 666.

The trial court must also consider the factors as set forth in T.C.A. § 36-6-106 (1996):

> 36-6-106. Child custody.--In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;
>
> (7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
>
> (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and
>
> (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

The trial court was faced with conflicting evidence concerning the fitness of each party as a parent. Because the trial judge, as the trier of fact, had the opportunity to

4

observe these parties and their manner and demeanor on the witness stand, the weight, faith and credit accorded to their testimony is entitled to great weight in this Court. *Mays v. Brighton Bank*, 832 S.W.2d 347, 351-52 (Tenn. Ct. App. 1992), *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844, 849 (Tenn. Ct. App. 1982).

Bearing in mind the mandate of the comparative fitness test and after a review of the entire record in this case, we have reached the conclusion that the evidence does not preponderate against the finding by the trial court that the award of custody to the Wife is in the best interest of the children.

For Husband's next issue, he contends that the trial court erred in its allocation of the parties' marital assets and debts. Specifically, he argues that the $1,100.00 value given to the household furnishings is unreasonable and that the appropriate value is approximately $25,000.00. He further avers that Wife should be responsible for a $9,187.87 loan, which he classifies as a "Direct Student Loan." He also claims that the trial court failed to consider a $5,800.00 IRS tax debt, a $3,300.00 check Wife obtained from Household Finance, and $5,000.00 in proceeds Wife received from a lawsuit with the City of Jackson.

Wife asserts that the evidence does not preponderate against the trial court's decision concerning the division of marital property and debts. She argues that she submitted an itemized list of the household furnishings which she valued at $1,100.00 recognizing the very low market value of used furniture. As to the "Direct Student Loan," Wife testified that the parties often obtained Wife's "student loans" to use as living expenses due to the low interest rate. Wife testified that she used the check from Household Finance to pay expenses after Husband moved out.

Trial courts have broad discretion in dividing the marital estate upon divorce. *Kincaid v. Kincaid*, 912 S.W.2d 140, 142 (Tenn. Ct. App. 1995). In *Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988), this Court discussed the equitable division of marital property:

> Tenn. Code Ann. § 36-4-121(a) provides that marital property should be divided equitably without regard to fault. It gives a trial court wide discretion in adjusting and

adjudicating the parties' rights and interests in all jointly owned property. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983). Accordingly, a trial court's division of the marital estate is entitled to great weight on appeal, *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973), and should be presumed to be proper unless the evidence preponderates otherwise. *Lancaster v.Lancaster,* 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984); *v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).

A trial court's division of marital property is to be guided by the factors contained in Tenn. Code Ann. § 36-4-121(c). However, an equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.

*Batson*, 769 S.W.2d at 859.

From our review of the record, we find that the evidence does not preponderate against the trial court's finding as to the division of marital property and debt. The trial court reached an equitable division of property with approximately 53% of the assets awarded to Wife and approximately 47% awarded to Husband. Further, the trial court ordered Wife responsible for $36,684.44 and Husband responsible for $37,944.81 of the marital debt. Given the fact that Husband's income is $71,400.00 per year and Wife's income is $26,728.00, we think the division is more than equitable.

For his third issue, Husband contends that the trial court erred in ordering him to pay Wife $23,536.15 in attorney's fees as alimony *in solido*. He argues that Wife received a sufficient amount of cash in the division of marital property to pay her attorney's fees, including: $28,831.06 from Husband's Mass Mutual 401K, $19,291.00 from Husband's Dana Corporation savings investment plan, and $1,894.00 cash for a total of $50,016.00.

On the other hand, Wife asserts that the trial court did not abuse its discretion in ordering Husband to pay a portion of her attorney's fees since she is in need of such an award. She notes that Husband's calculations are incorrect because the decree awarded each party one-half of the Mass Mutual 401-K ($14,415.00), one half of the Dana Corporation savings investment plan ($9,645.00). Wife was also awarded $1,894.00 cash for a total of $25,954.00. She further asserts that Husband has almost

three times greater income than she has and that if she is ordered to pay the fees she will deplete a significant amount of assets she received in the divorce.

Attorney fee awards are treated as alimony. *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988). In determining whether to award attorney's fees, the trial court should again consider the relevant factors in T.C.A. § 36-5-101(d)(1). *Hougland v. Hougland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992). Where the wife demonstrates that she is financially unable to afford counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney's fees. *Id.; Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). The award of attorney's fees is within the sound discretion of the trial court, and unless the evidence preponderates against the award, it will not be disturbed on appeal. *Lyon v. Lyon,* 765 S.W.2d 759, 762-63 (Tenn. Ct. App. 1988).

Considering this and the record as a whole, we do not feel that the trial court abused its discretion in granting Wife $23,536.12 to help pay her attorney's fees. Each party shall be responsible for their attorney fees on appeal, and the case is remanded to the trial court for such other proceedings as are necessary.

Accordingly, the judgment of the trial court is affirmed. Costs of the appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,
PRESIDING JUDGE,W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**


_____
**DAVID R. FARMER, JUDGE**